UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT CHATTANOOGA

| | |
|---|---|
| THE TRUSTEES OF THE PLUMBERS AND ) <br> STEAMFITTERS LOCAL UNION NO. 43 ) <br> HEALTH AND WELFARE FUND and ) <br> THE TRUSTEES OF THE PLUMBERS AND ) <br> STEAMFITTERS LOCAL UNION NO. 43 ) <br> PENSION FUND, ) <br> ) <br> Plaintiffs, ) <br> ) <br> v. ) <br> ) <br> ) <br> LARRY CRAWFORD, Individually, and d/b/a ) <br> LARRY CRAWFORD PLUMBING AND ) <br> MECHANICAL CONTRACTORS, LARRY ) <br> CRAWFORD PLUMBING, LARRY ) <br> CRAWFORD PLUMBING COMPANY, and ) <br> CRAWFORD PLUMBING, ) <br> ) <br> Defendant. ) | 1:06-CV-245 <br><br> Chief Judge Curtis L. Collier |

**MEMORANDUM**

Plaintiffs Trustees of the Plumbers and Steamfitters Local Union No. 43 Health and Welfare

Fund and Trustees of the Plumbers and Steamfitters Local Union No. 43 Pension Fund ("Plaintiffs")

filed this case against defendant Larry Crawford, individually and doing business under various

names ("Defendant"),[1] alleging violations of the Employee Retirement Income Security Act of 1974

("ERISA"), 29 U.S.C. §§ 1132(a)(3), 1132(g)(2), and 1145.  Plaintiffs and Defendant agree that for

25 years Defendant  contributed to a health and welfare fund and a pension fund run by Plaintiffs.

Most everything else the parties disagree on, including whether those contributions were pursuant

---

[1]The parties are inconsistent in whether Defendant is a singular person or entity or multiple entities.  Because Plaintiffs' complaint refers to Defendant as a singular entity and Crawford refers to himself that way, the Court is using "Defendant."

to a collective bargaining agreement, what work Defendant's non-union employees performed, and whether Defendant owes Plaintiffs over $1.2 million, which Plaintiffs sued to recover. The parties filed cross-motions for summary judgment (Court File Nos. 58 & 60), along with accompanying memoranda (Court File Nos. 61 & 70), responses (Court File Nos. 65 & 69), replies (Court File Nos. 71 & 72), and a sur-reply at the Court's invitation (Court File No. 78). For the following reasons, the Court will **GRANT IN PART** Plaintiff's motion (Court File No. 58) and **DENY** Defendant's motion (Court File No. 60).

## I.      BACKGROUND

Plaintiffs operate a health and welfare fund and a pension fund ("Funds"), which serve the Plumbers and Steamfitters Local Union No. 43 ("Union"), which represents employees, and the Associated Mechanical Contractors, which represents employers. The Funds are governed by trust agreements, and Defendant contributes to them for himself and his employees. Defendant has contributed to these multiemployer Funds for approximately twenty-five years, each month submitting a signed statement certifying "that the information contained in this report is a full and accurate statement of hours worked and wages earned by all employees working at the trade under the bargaining agreement." (Court File No. 70, p. 11). Plaintiffs contend Defendant contributes to the Funds because he is bound by a collective bargaining agreement, but Defendant contends he is not party to the collective bargaining agreement ("CBA"). He contends he contributes to the Funds under a provision of the trust agreements allowing participation by employees not covered by a CBA. Plaintiffs assert Defendant agreed to be bound by a CBA in 1983 and again in 1992 and that these CBAs perpetually renew. Defendant, however, argues the CBAs do not renew automatically

and denies signing the 1993 CBA, and asserts he is not bound by a CBA.

The CBA requires employers to submit contributions to the Funds on behalf of all employees performing work covered by the CBA ("covered work"), including work done by non-Union employees (Court File No. 58-3, "CBA"). Plaintiffs assert Defendant did not make contributions for non-union employees performing covered work. They brought this action under ERISA, 29 U.S.C. §§ 1132(a)(3), 1132(g)(2), and 1145, seeking $1.2 million in delinquent contributions, interest, penalties, liquidated damages, and punitive damages, along with costs, expenses, and attorney's fees. In addition to denying he is bound by the CBA, Crawford denies using non-union employees for covered work. He also claims the definition of "covered work" in the CBA is ambiguous and asserts that requiring him to pay delinquent contributions for non-Union employees who did not receive benefits from the Funds would lead to a windfall for Plaintiffs.

## II.    STANDARD OF REVIEW

Summary judgment is proper when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). When evaluating cross-motions for summary judgment, each motion is evaluated on its own merits with all facts and inferences in the light favorable to the nonmoving party. *Bakery & Confectionery Union & Indus. Int'l Health Benefits & Pension Funds v. New Bakery Co.*, 133 F.3d 955, 958 (6th Cir. 1998).

First, the moving party must demonstrate no genuine issue of material fact exists. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986); *Leary v. Daeschner*, 349 F.3d 888, 897 (6th Cir. 2003).

The Court views the evidence, including all reasonable inferences, in the light most favorable to the non-movant. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp*., 475 U.S. 574 (1986); *Nat'l Satellite Sports, Inc. v. Eliadis Inc.*, 253 F.3d 900, 907 (6th Cir. 2001). However, the non-movant is not entitled to a trial based solely on its allegations, but must submit significant probative evidence to support its claims. *Celotex*, 477 U.S. at 324; *McLean v. Ontario, Ltd.*, 224 F.3d 797, 800 (6th Cir. 2000). The moving party is entitled to summary judgment if the non-movant fails to make a sufficient showing on an essential element for which it bears the burden of proof. *Celotex*, 477 U.S. at 323. In short, if the Court concludes a fair-minded jury could not return a verdict in favor of the non-movant based on the record, the Court may enter summary judgment. *Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 251-52 (1986); *Lansing Dairy, Inc. v. Espy*, 39 F.3d 1339, 1347 (6th Cir. 1994).

If the Court does not render summary judgment on the whole action, it "should, to the extent practicable, determine what material facts are not genuinely at issue." Fed. R. Civ. P. 56(d).

## III.    DISCUSSION

Plaintiffs brought this action under a section of ERISA stating: "Every employer who is obligated to make contributions to a multiemployer plan under the terms of the plan or under the terms of a collectively bargained agreement shall, to the extent not inconsistent with law, make such contributions in accordance with the terms and conditions of such plan or such agreement." 29 U.S.C. § 1145. That section may be enforced by the trustees of a plan in federal court. *Laborers Health & Welfare Trust Fund v. Advanced Lightweight Concrete Co.*, 484 U.S. 539, 547 (1988). Plaintiffs also brought suit under 29 U.S.C. § 1132(a)(3) & (g)(2), which allows fiduciaries to bring

civil actions to obtain equitable relief and recover unpaid contributions, interest or liquidated damages, and reasonable attorney's fees and costs.

Essentially, Plaintiffs make the following allegations:

(1) Defendant is bound by a collective bargaining agreement;
(2) the CBA requires contributions for non-union employees performing covered work;
(3) Defendant had non-union employees perform covered work; and
(4) Defendant did not make the required contributions for such employees.

Defendant denies being bound by the CBA, denies using non-union employees for covered work, and argues non-union employees never received benefits and cannot receive them now.

## A. Defendant is Bound by the CBA

After reviewing the evidence, the Court concludes Defendant is bound by the CBA. To reach this conclusion, the Court began with a central fact agreed upon by both parties: Defendant contributed to the Funds for 25 years. The only way Defendant could contribute to employee benefit funds is pursuant to written agreement creating the Funds. 29 U.S.C. § 1102. Defendant contends he was bound by the trust agreements, not the CBA. But, as is discussed below, his explanation of being bound by the trust agreements without being bound by the CBA is not reasonable. The facts show the only way Defendant could participate in the Funds is if he was bound by the CBA.

### 1. The Trust Agreements

Contract interpretation is a question of law for the Court. *Golden v. Kelsey-Hayes Co. (In re Golden)*, 73 F.3d 648, 653 (6th Cir. 1996). For the parties to have entered into the trust agreements, there must have been a meeting of the minds in mutual assent. *See Howell v. Rivergate Toyota, Inc.*, 144 F. App'x 475, 480 (6th Cir. 2005) (applying Tennessee law). To determine whether there was a meeting of the minds, the Court looks at objective manifestations of the parties'

intent. *Bosley v. 21 WFMJ TV, Inc.*, Nos. 06-3091, 06-3624, 06-3625, 06-3626, 06-3894, 06-3895, 2007 WL 2050655, *4, 2007 U.S. App. LEXIS 17396, *13 (6th Cir. July 13, 2007); *RE/MAX Int'l, Inc. v. Realty One, Inc.*, 271 F.3d 633, 646 (6th Cir. 2001).  Defendant's after-the-fact subjective manifestations, that he was never bound by the CBA, are superseded by the objective evidence.

Objective manifestation is contained in the trust agreements.  Defendant argues the trust agreements allow for participation by employees who work for employers not party to a CBA. However, his reading of the trust agreements is not a possible valid interpretation.

In construing the trust agreements, the Court looks to general rules of contract interpretation. *See Rodriguez v. Tenn. Laborers Health & Welfare Fund*, 89 F. App'x 949, 953 (6th Cir. 2004). "When interpreting ERISA plan provisions, general principles of contract law dictate that we interpret the provisions according to their plain meaning in an ordinary and popular sense.  In applying the 'plain meaning' analysis, we must give effect to the unambiguous terms of an ERISA plan." *Williams v. International Paper Co.*, 227 F.3d 706, 711 (6th Cir. 2000) (internal citations and quotation marks omitted).  The terms of a contract should "be interpreted as part of an integrated whole."  *Musto v. American General Corp.*, 861 F.2d 897, 906 (6th Cir. 1988).

Starting first with the health and welfare trust agreement (Court File No. 60-5), it defines an "Employer" as:

> Any person, firm association, union, trust, partnership, or corporation employing an employee working under the "jurisdiction of the Unions" and contributing into the Welfare Fund, for said "Employees."  "Jurisdiction or the Unions" as used in this Agreement shall mean the area of place covered by collective bargaining agreements maintained with the employers.

(*id*., art. I § 1).

This section provides that an employer must employ employees working under the

"jurisdiction of the Union," and expressly states the "jurisdiction of the Unions" is workplaces with CBAs "maintained with the employers." There is no provision allowing for participation by an employer who is not bound by a CBA.

The trust agreement contains two relevant definitions of an "Employee." The first is:

> Any person covered by a collective bargaining agreement; who is engaged in employment with respect to which the employer is obligated to make contributions to this Health and Welfare Fund

That provision requires contributions on behalf of employees covered by a CBA. The second definition of "Employee" is:

> Any other person, or classification of persons, not covered under a collective bargaining agreement between the employer and union as may be accepted by the trustees and for which contributions are received at the rate as set forth in Section 3(b)

(*id.*, art. I § 2).

Relying on this provision, Defendant argues employees need not be covered by a CBA, and he was such an employer. There is, however, a disconnect, because while *employees* need not be bound by a CBA, there is nothing stating *employers* can participate without being bound. Defendant's understanding of this provision is not a reasonable reading, especially in the context of the entire health and welfare trust agreement.

Although this provision allows participation in the Funds by employees who are not covered by a CBA, the definition of "employer" requires an employer who is bound by a CBA. Thus, this provision for employees not covered by a CBA allows for contributions for office workers or other employees not performing covered work. It does not allow employers who are not covered by the CBA to contribute. Defendant cites no other provisions supporting his stance.

There are other provisions in the health and welfare trust agreement which also indicate a

CBA is required between the Union and employer:

The rate of contributions requires: "each Employer shall contribute to the Fund the amount required by the collective bargaining agreement between the Union and the Employer. The rate of contribution shall at all times be governed by the aforesaid collective bargaining agreement then in force." (*id*., art. V § 1). The trust agreement also requires: "All contributions shall be made effective as required by the collective bargaining agreement and shall continute to be paid as long as the Employer is so obligated pursuant to the collective bargaining agreement with the Union." (*id*., art. V § 2). In addition, the trust agreement provides for an employer to be terminated "when he is no longer obligated, pursuant to an Agreement with the Union, to make contributions to this Welfare Fund." (*id*., art. XII § 1). All these provisions indicate participation in the health and welfare fund requires a collective bargaining agreement with the employer.

The pension fund trust agreement also supports Plaintiffs' position (Court File No. 71-5). The pension trust agreement requires contributions by employers "in accordance with the terms and provisions of their collective bargaining agreement with the Union" (*id*., § 2.1). It prohibits amendments "inconsistent with the provisions of the collective bargaining agreement at the time then in effect between the Union and the Employer" (*id*., § 12.2). Both provisions clearly require a CBA between employer and the Union.

The pension trust agreement plan document (Court File No. 71-6) defines "Employee" as a person:

(a) covered by a collective Bargaining Agreement between the Employers and the Union requiring contributions to the Fund on account of the employment of such person (excluding a person who is a also an employer or a shareholder of an Employer; or
(b) not covered by a Collective Bargaining Agreement, (otherwise know as a Non-Bargained Employee) excluding sole proprietors, partners and shareholderemployee

of a corporation which has elected to be taxed under Subchapter S of the Code, if such person is employed by a Contributing Employer which has agreed in writing: (1) to be bound by the Plan all amendments thereto; and (2) to make contributions on behalf of either all such Non-Bargained Employees in it employ or any group of such Non-Bargained Employees which is not a discriminatory classification with the meaning of Section 410(b) of the Code. . .

(*id.*, art. 2 § 15).

Like the definition of employee in the health and welfare trust agreement, this definition allows employees covered by a CBA between the employer and Union to participate in the pension fund and also allows participation by employees who are not covered under such an agreement. The pension document's definition of employer is also like the health and welfare trust agreement's in that an employer is someone who "has a Collective Bargaining Agreement with the Union requiring periodic contribution to the Pension Fund and who, in writing, adopts and agrees to be bound by the terms and provisions of the Agreement and Declaration of Trust and any amendments and modifications thereof." (Court File No. 71-6, art. 2 § 16).

Plaintiffs point out Defendant has been granted his pension and received payments from the pension fund (Court File No. 71-7). Plaintiffs describe as inconsistent Defendant's receipt of his pension, which requires being bound by the CBA, while declaring he is not bound by the CBA.

Defendant points out the statute requiring employers to make contributions to employee benefit funds allows for contributions pursuant to "terms of the plan *or* under the terms of a collectively bargained agreement." 29 U.S.C. § 1145 (emphasis added); *see also Central States, Southeast & Southwest Areas Pension Fund v. Gerber Truck Service, Inc.*, 870 F.2d 1148, 1154 (7th Cir. 1989) (written agreement for ERISA plan need not be a CBA). This argument sidesteps the issue here, where there are two plans, which themselves require the existence of a CBA.

The Funds serve the Union, which represents employees, and the Associated Mechanical

Contractors ("AMC"), which represents employers who are signatory to the CBA (Court File No. 58-3, p. 1). The Funds provide a benefit to the Union and AMC. As the health and welfare fund's introductory "Declaration of Trust" states, it is an agreement between those two parties. The trustees of the Funds are comprised equally and exclusively of representatives from the Union and AMC. Defendant insists he is not part of either entity but is nevertheless a part of the Funds. His explanation, however, is illogical because the trust agreements do not allow for employers not bound by a CBA and there is no reason a Fund designed to serve two parties would allow for outsiders. Especially in light of these circumstances, it is not reasonable that Defendant could hire Union employees without having a CBA with the Union.

Therefore, the trust agreements conclusively establish any employer contributing to the Funds must be doing so pursuant to a CBA with the Union.

### 2. Strong Additional Evidence of a CBA

Aside from the trust agreements, the evidence showing Defendant is bound by a CBA is strong. Plaintiffs contend Defendant signed agreements in 1983 and 1992, both of which perpetually bound him to the CBA.

Plaintiffs introduced a notarized document signed by Crawford indicating he was binding himself to the 1983-1984 CBA (Court File No. 71-2).[2] There is additional evidence Defendant signed the 1983 agreement because of testimony Defendant went to the Union in the early 1980s to

_____

[2]There is a pending motion to strike evidence of the 1983 assent agreement on the grounds its admission violates discovery rules (Court File No. 79). This motion was filed 41 days after Plaintiffs' reply introduced this evidence. Due to time constraints in deciding the instant cross-motions for summary judgment, the Court must decide the summary judgment motions before the motion to strike is ripe. Therefore, the Court notes the outcome of the summary judgment motions could be affected by the decision on the motion to strike.

sign an agreement (Court File No. 58-20, pp. 50-52 & 55-57).[3]

Plaintiffs also present a signed assent agreement from 1992 in which Defendant purportedly agrees to the CBA in effect from July 1, 1992, until June 30, 1995 (Court File No. 58-12). Plaintiffs' handwriting expert determined the 1992 agreement bears Defendant's signature (Court File No. 58-14). Defendant asserts he did not sign the document (Court File No. 60-1, ¶ 12).

Plaintiffs also submitted evidence that, in resolving a dispute between Defendant and an employee, the National Labor Relations Board ("NLRB") wrote there was a collective bargaining agreement between Defendant and the Union (Court File No. 58-15). As Defendant correctly notes, this evidence is a back-door attempt at issue preclusion. The NLRB's conclusion is either inadmissible hearsay or an unsupported attempt at issue preclusion, and therefore the Court has not relied on it.

Even if Defendant signed CBAs with the Union in 1983 or 1992, it not evident the agreements continued in perpetuity. The 1983 agreement has not been submitted in evidence, but the 1992-1995 CBA includes the following clause:

> This Agreement, which is in full force and effect until June 30, 1995 shall automatically renew itself for an additional period of one (1) year from the termination date hereof unless either party serves written notice upon the other ninety (90) days prior to its expiration date requesting that it be amended or terminated.

(Court File No. 58-16). The same language is contained in subsequent CBAs, through 2007 (Court File Nos. 58-17, 58-18, & 58-19).

Plaintiffs call this language an "evergreen clause" and contend the CBA renews

---

[3]This evidence, in which Defendant explained he is going to sign an agreement with the Union, is hearsay but is admissible as a statement of Defendant's then existing state of mind, such as intent. Fed. R. Evid. 803(3); *see also Mutual Life Ins. Co. v. Hillmon*, 145 U.S. 285, 295 (1892).

automatically until an employer withdraws. Plaintiffs cite the testimony of a former Union representative who testified it was understood employers were bound by the CBA and subsequent versions until they withdrew (Court File No. 58-21). However, as Defendant points out, this clause renews itself only "for *an* additional" one year period (emphasis added). In contrast, evergreen clauses normally continue indefinitely. *E.g.*, *Trs. of the B.A.C. Local 32 Ins. Fund v. Norwest Tile Co.*, 2005 WL 3440431, 2005 U.S. App. LEXIS 27879 (6th Cir. Dec. 14, 2005) (agreement "shall renew from year to year thereafter"); *Plumbers & Pipefitters Local Union No. 572 Health & Welfare Fund v. A & H Mech. Contrs.*, 100 F. App'x 396, 400-01 (6th Cir. 2004) ("Contract shall be extended on a year to year basis"); *Int'l Ass'n Bridge, Structural, & Ornamental Iron Workers v. J & N Steel & Erection Co.*, 8 F. App'x 381, 382 (6th Cir. 2001) (agreement "shall automatically renew itself from year to year"); *Trustees of the Mich. Laborers' Health Care Fund v. Gibbons*, 209 F.3d 587, 589 (6th Cir. 2000) (automatically renewing the agreement "each year"); *Trustees of the B.A.C. Local 32 Ins. Fund v. Fantin Enters.*, 163 F.3d 965, 969 (6th Cir. 1998) ("Agreement shall remain in full force and effect through May 27, 1992 and from year to year thereafter").

Nevertheless, it is possible to read this clause as incorporating old agreements into new agreements. That is, when a new CBA was created in July 1995 (Court File No. 58-17), the renewal clause continued employers' participation in the CBA unless they withdrew. Although this reading of the CBA is less plausible than Defendant's reading, it nevertheless makes sense that a renewal clause would bind employers to a new CBA, which then takes effect.

### 3. Course of conduct

The evidence Defendant was bound by the CBA is conclusive in light of the parties' course of conduct. Defendant, in a sworn affidavit, states he never believed he was party to a CBA, was

12

never told he was a party, and did not believe he had to be a party to a CBA to make contributions (Court File No. 60-2). Defendant asserts the 25-year course of dealings during which Plaintiffs never told him he was bound by the CBA validates his contention the Plaintiffs allowed him to contribute without being bound. He states he has not made contributions for non-Union employees and never believed he had to (*id.*), and the course of conduct allowed him to "contribute for his Union plumbers and apprentices, but not for non-union employees" (Court File No. 61, p. 8).

However, the evidence establishes Defendant contributed to the Funds pursuant to the CBA and the Funds continued accepting those contributions. Even if the CBA did not automatically renew, Defendant's actions created an implied-in-fact contract following the CBA's terms.

"It is a fundamental tenet of contract law that a legally binding contract can be implied from the circumstances and conduct of the parties." *Contship Containerlines v. Howard Indus.*, 309 F.3d 910, 912 (6th Cir. 2002) (internal quotation marks omitted). "Contracts implied in fact arise under circumstances which, according to the ordinary course of dealing and the common understanding of men, show a mutual intention to contract. Such an agreement may result as a legal inference from the facts and circumstances of the case." *Luithly v. Cavalier Corp.*, No. 98-5507, 1999 WL 357791, 1999 U.S. App. LEXIS 10653 (6th Cir. May 20, 1999) (quoting *Weatherly v. American Ag. Chem. Co.*, 65 S.W.2d 592, 598 (Tenn. App. 1933)). In *Luithly*, the Sixth Circuit further explained:

> Contracts implied-in-fact therefore are not concerned with a formal promise where offer and acceptance are clearly established by spoken or written words. It is a contract based on a promise that may be inferred from the conduct of the parties. It is, however, a real contract based on mutual assent of the parties -- a "meeting of the minds" -- and an intentional manifestation of such assent. There is no difference in the legal effect of a contract implied-in-fact and a contract based on a formal acceptance by the parties. The facts and circumstances must be sufficiently clear to prove mutual assent and provide at least the bare bones of the contract terms.

*Id.*

A party is bound to a CBA only if he manifests "an unequivocal intent to be bound." *Trs.*
*of the Chi. Painters & Decorators Pension, Health & Welfare, & Deferred Sav. Plan Trust Funds*
*v. LaCosta, Inc.*, 397 F.3d 558, 563 (7th Cir. 2005). However, "an employer's intent to be bound
can be established if it adheres to the terms of the CBA." *Id.* at 564.

Each month for 25 years, Defendant submitted a report to the Funds containing the following
statement: "I certify that the information contained in this report is a full and accurate statement of
hours worked and wages earned by all employees working at the trade under the bargaining
agreement." (Court File No. 70, p. 11). Crawford argues this certification merely sets the rate of
contributions for employers not bound by the CBA.

In *Michigan Bricklayers & Allied Craftsmen Health Care Fund v. Northwestern Constr.*,
1997 WL 351296, 1997 U.S. App. LEXIS 15440 (6th Cir. June 23, 1997), the Court held a
defendant employer's actions after a CBA expired extended the employer's obligations to contribute
to a benefit fund. Although "an employer's intent to be bound by the benefits fund provisions of a
collective bargaining agreement cannot be inferred when the employer has not signed a collective
bargaining agreement," an expired, signed collective bargaining agreement may continue to bind
an employer if the employer demonstrates an intent to continue to be bound. *Michigan Bricklayers*,
1997 WL 351296, at *2, 1997 U.S. App. LEXIS 15440, at *6. Unilateral actions by an employer
that foster an impression that the employer intends to be bound by an expired collective bargaining
agreement are also sufficient to trigger ERISA liability. *Id.* See also *Sheet Metal Workers' Int'l*
*Ass'n Local 19 v. Herre Bros.*, 201 F.3d 231, 245 (3d Cir. 1999) ("Defendant may not attempt to
seek the 'best of two worlds' by attempting to assert that his obligations have terminated while
continuing to reap the benefits of hiring and employing Union members, and continuing to conduct

itself as though it were bound under the agreement.").

These cases show that if Defendant signed a CBA and then continued to act as if he was bound by it, then he is bound by it. As previously discussed, there is strong evidence Defendant signed Union agreements in 1983, 1992, or both years. There is conclusive evidence the trust agreements which Defendant participated in required him to be bound by a CBA and the monthly reports he submitted referred to the CBA. Leaving a CBA requires unequivocal withdrawal. *Trs. of the B.A.C. Local 32 Ins. Fund v. Norwest Tile Co.*, 2005 U.S. App. LEXIS 27879, *11 (6th Cir. 2005) (citing *Sheet Metal Workers' Int'l*, 201 F.3d at 244). There is no evidence Defendant attempted to unequivocally withdraw from the CBA until December 2006, when he sent a letter denying the existence of any agreement but withdrawing "to the extent any such agreements or assents may be alleged to be in place" (Court File No. 58-27).

Although there are disputes of evidence as to whether Defendant signed the 1983 or 1992 agreements, there is no genuine dispute as to a material fact that Defendant is bound by the CBA. Given the evidence, no reasonable jury could conclude otherwise, and therefore the Court will establish as fact that Defendant is bound. *See* Fed. R. Civ. P. 56(d) (allowing Court to decide what material facts are not genuinely at issue).

> **B.**      **Requirements of the CBA**

Section 3.1 of the CBA specifies the CBA covers "all employees" engaged in plumbing as defined in that section. Sections 7.2 and 7.3 of the CBA mandate employers to contribute to the Funds for employees "covered by this Agreement."

As a matter of law, collective bargaining agreements may require employers to contribute to funds for all employees, not just employees who are members of a union. *Trs. of the B.A.C. Local*

*32 Ins. Fund v. Fantin Enters.*, 163 F.3d 965, 969 (6th Cir. 1998). It is acceptable for employees to be "defined by the nature of their work and not their union status." *Id.* In *Iron Workers' Local No. 25 Pension Fund v. MCS General Contrs., Inc.*, Nos. 98-2107 & 99-2262, 2000 WL 1276830, 2000 U.S. App. LEXIS 22688, *12-13 (6th Cir. Aug. 30, 2000), the Court held a CBA requiring contributions for "each employee covered by [the] Agreement" mandated contributions from any employee performing covered work, even if not otherwise covered by the CBA.

Therefore, it clear the CBA requires contributions for any employee, whether or not a member of the Union, who performs covered work. Defendant argues the Union orally waived this requirement, the definition of covered work is ambiguous, and no payments are due for employees who worked outside the Union's geographic area. The Court will address those three arguments.

### 1.    Oral Representations

Defendant insists former Union business managers told him he could use the Union's members for his work and make contributions to the Funds on their behalf without being bound by a CBA (Court File No. 58-11, p. 162). Defendant identified two former business managers, Tommy Basham and Jim Collins, as people who allowed him to use Union members and make contributions without being party to a collective bargaining agreement (*id.*, pp. 187-88). However, there is no written documentation allowing him to do that (*id.*, pp. 180-81) and Basham denies allowing it (Court File No. 58-8, p. 16). Basham states he would not have allowed that because the Union would lose protection of its members' jobs (*id.*). Another former Union representative, who Defendant apparently claims authorized him to contribute without being bound by the CBA, denies ever allowing that (Court File No. 58-21, pp. 53-54).

However, Basham also submitted a sworn affidavit on behalf of Defendant in which he

explains the CBA has always been interpreted to not apply to non-Union jobs (Court File No. 69-11). He stated he discussed Defendant's employment of non-Union workers with the executive board on more than one occasion, and the board was apparently okay with Defendant employing "mainly laborers" while "paying benefits and wages for his Union plumbers." (*id*.). Basham states, "It was my understanding that [Defendant] also paid for the Union plumbers but not for the non-Union employees and that this was consistent with any obligations he had under the collective bargaining agreement." (*id*.). Basham explained that most construction jobs in Chattanooga during the 1980's contained both Union and non-Union workers, which was not considered to violate the CBA because plumbing work was interpreted narrowly so non-Union employees would not be performing covered work (*id*.). Basham's statement speaks of Union plumbers while describing non-Union employees only generally. The statement states the Union allowed non-Union employees to work for Defendant but does not state the Union allowed non-Union employees to perform covered work. Indeed, Defendant's affidavit specified his non-Union employees do not do plumbing work (Court File No. 60-2). Plumbing work is done by his Union personnel (*id*.).

Congress enacted § 1145 so multiemployer plans could "rely upon the terms of collective bargaining agreements and plans as written, thus permitting trustees of plans to recover delinquent contributions efficaciously, and without regard to issues which might arise under labor-management relations law." *Bakery & Confectionery Union & Indus. Int'l Health Benefits & Pension Funds v. New Bakery Co.*, 133 F.3d 955, 959 (6th Cir. 1998) (internal quotation marks omitted). Under that section, "multiemployer plans are entitled to rely on the literal terms of written commitments between the plan, the employer, and the union." *Id.* Therefore, "the actual intent of and understandings between the contracting parties are immaterial." *Id.* Furthermore, the cost of

administering funds is reduced by employing uniform rules for all employer participants. *Id.* at 961.

Accordingly, the Sixth Circuit in *Bakery & Confectionery Union* held a fund could enforce the literal terms of an employer's agreement regardless of understandings or defenses between the employer and union. *Id.* The Court did not address evidence from the employer that it had an agreement with the union to not contribute on behalf of some employees. *Id.* n.5. Likewise, in *Northwestern Ohio Adm'rs, Inc. v. Walcher & Fox, Inc.*, 270 F.3d 1018, 1024 (6th Cir. 2001), the Court approvingly cited a district court's conclusion that "an oral agreement between the employer and the union to disregard the text and course of performance cannot prevent the written agreement from being enforced." 270 F.3d at 1024. Fund administrators may rely on the unambiguous terms of the writing. *Id*. at 1025. Oral agreements are not permitted. *See Central States, Southeast & Southwest Areas Pension Fund v. Behnke, Inc.*, 883 F.2d 454, 459 (6th Cir. 1989).

## 2.    Definition of Covered Work

Plaintiffs assert the CBA's definition of covered work is broad but clear. Defendant claims it is ambiguous. Whether a contract term is ambiguous is a question of law for the court to determine. *Northwestern Ohio Adm'rs*, 270 F.3d at 1025.

Covered work is defined as:

the installation of all plumbing and/or pipe fitting systems and component parts thereof, including fabrication, assembling, erection, installation, testing, dismantling, repairing, reconditioning, adjusting, altering, servicing and handling, unloading, distributing, tying on and hoisting of all piping materials, by any method, including all hangers and supports of every description and all other work included in the trade jurisdiction of the United Association as defined in the current constitution of the United Association.

(CBA § 3.1).

Defendant contends this definition is ambiguous because (1) other uncited sections of the

CBA purport to explain the definition; (2) Plaintiffs' counsel in a deposition asked how someone would define "plumbing" to a layperson; (3) welding is defined as covered work, yet a Union representative said it was not; and (4) the terms are hard to define in the abstract.

As to the first issue, it is not clear to what sections of the CBA Defendant is referring, but the fact that other sections provide more detail does not mean the definition is ambiguous. For instance, §§ 3.3 and 3.4 specify activities to be done by Union employees. Detailed requirements do not render ambiguous the definition of covered work.

Second, the definition of plumbing for a layperson may be ambiguous, which is why the CBA spells out what covered work is.

Third, the disparity over welding can be explained by § 3.4, which requires employers to use Union workers when "welding machines [are] used in conjunction with work covered by this Agreement." In other words, sometimes welding is covered work and sometimes it is not.

Defendant's fourth argument is also unavailing. Using "core drilling" as an example, Defendant asserts witnesses gave different interpretations of whether covered work includes "core drilling," and Plaintiffs cannot connect abstract definitions of plumbing to the work allegedly done by non-Union workers for Defendant. This is a factual question as to whether non-Union employees did covered work.

### 3. Geographic Area

Defendant identifies 36 employees who performed all their work for Defendant outside the Union's geographical area, as specified in art. 2 §§ 1 and 2 of the CBA (Court File No. 60-2). Defendant asserts those employees are not members of the Union and the CBA only requires payments for Union members sent outside the geographical area. Defendant bases that assertion on

the phrase "employee represented by the union," which apparently appeared in previous CBAs but not in the current one in § 10.1. Defendant points out the omission of the phrase leaves a relevant sentence in the CBA meaningless. However, all employees doing covered work are represented by the Union, and the rest of § 10.1 requires payments as "set forth in this Agreement."

When an employee works outside the Union's geographic area, the CBA requires payment of the "total economic package" of either the local union where the employee is working or the union with the CBA, whichever is higher (*id.*, § 10.1). Therefore, it is possible Defendant owes contributions for employees who worked outside the geographic area of the Union. Accordingly, the Court will deny Defendant's motion for partial summary judgment as to whether the Funds are owed contributions on employees who worked outside the geographic area.

### C.    Non-Union Employees Performing Covered Work

There are genuine disputes of material fact as to whether non-Union employees performed covered work. There is evidence non-union employees performed covered work (Court File Nos. 58-4, pp. 12-16; 58-5, pp. 7-9 & 15-21; 58-6, pp. 9-15; 58-7, pp. 12-17; 58-9, pp. 3-5). Defendant contends this evidence does not relate to any time before 2005, but does not cite that proposition and in at least one instance the evidence establishes a non-union employee performed covered labor between 1996 and 2006 (Court File No. 58-9, pp 3-4). Defendant has submitted contradictory evidence showing he did not use non-Union employees for covered work (Court File Nos. 60-8 & 69-3, p. 13].[4] Defendant contends none of those non-union employees performed covered work. They have affidavits from the individual employees or other employees denying they ever performed

---

[4]This witness has provided conflicting testimony; on summary judgment, the Court cannot resolve the conflict.

covered work or affidavits stating the employees are outside the geographic area (Court File Nos. 70-8 & 60-9), and Defendant also denies using non-Union employees in covered work (Court File No. 69-5). Defendant also submitted affidavits from Union employees who swear they have never seen non-Union workers performing bargaining work (Court File No. 60-10), and a longtime Union shop steward who was familiar with Union employees and the definition of covered work also made that assertion (Court File No. 60-11).[5]

Plaintiffs' auditor identified employees of Defendant for whom no contributions were made but "based on my analysis of the records, they should have been included because they performed covered labor." (Court File No. 58-21, ¶ 7). These records appear to be various tax forms, time sheets, payroll and earning summaries, and job contracts (*id*., ¶ 4). From that analysis, he determined each employee's classification, hourly rated, hours worked, and required contributions for 2001 through 2006 (*id*., ¶¶ 8-9). To determine who was performing covered labor, the expert "selected all non-reported employees with a rate greater than $11.00 per hour and who had wages of greater than $5,000 during the year for specific computations" (*id*., ¶ 11). Based "on the descriptions of the work non-reported employees performed," the expert determined those who made over $11 per hour were performing covered labor (*id*., ¶ 15). The expert added the total number of

---

[5]Plaintiffs ask the Court to not consider Defendant's affidavits due to discovery violations. Plaintiffs made this request in their reply to Defendant's response to their motion for summary judgment. They argue in a footnote the Court should disregard "the numerous affidavits" submitted by Crawford on the grounds Defendant intentionally hid the affidavits from Trustees's counsel, in violation of discovery requests, until Defendant filed its motion for summary judgment (Court File No. 71, p. 7 n. 6). Plaintiffs are accusing Defendant of discovery violations but have done so in a very limited manner, without any evidence such as affidavits, in a reply to which Defendant has no opportunity to respond, and with a proposed sanction (disregarding Defendant's affidavits) that would severely hamper Defendant's defense. Given these circumstances, the Court will not disregard the affidavits.

hours for those employees for whom contributions were not made, multiplied it by the appropriate rate, and determined Defendant owes $493,351.39 in past due contributions (*id.*, ¶¶ 16-17).

Defendant disputes this audit, contending it improperly includes all employees who earned over $11 per hour and includes employees who worked outside the geographical area of the Union (Court File No. 69, pp. 20-23).

Plaintiffs cite *Michigan Laborers' Health Care Fund v. Grimaldi Concrete*, 30 F.3d 692, 695 (6th Cir. 1994) for the proposition that "an employer's failure to maintain records under ERISA shifts the burden to the employer to come forward with evidence of the *precise* amount of work performed or with evidence to negative the reasonableness of the inference to be drawn from the [plaintiff's] evidence in order to avoid a finding that the employer violated its statutory record-keeping duty." This holding was based on 29 U.S.C. § 1059, which states: "every employer shall, in accordance with regulations prescribed by the Secretary, maintain records with respect to each of his employees sufficient to determine the benefits due or which may become due to such employees...." The Court noted 29 U.S.C. § 1059 imposes a "clear duty" on employers to "maintain adequate records." *Grimaldi*, 30 F.3d at 695.

Like this case, *Grimaldi* involved multi-employer benefits funds suing an employer for delinquent contributions. Because the defendant employer had no records regarding 80% of its work and incomplete records regarding the remaining 20%, the Court held the employer failed to maintain adequate records and therefore the burden shifted to the employer to prove what work was covered and what was not. *Id.* at 696. Since the employer violated its statutory duty and there could be no exact calculation of the precise amount of contributions due, the Court held, "under these circumstances, an employer is liable for contributions on all hours worked during a period in which

it has been *demonstrated* that some covered work was performed." *Id.* at 697 (emphasis added).

The burden only shifts when there has been a finding of fact that required contributions were not made. In *Grimaldi*, the parties stipulated to this. *Id.* at 693. In another case cited by Defendant, *Trs. of Detroit Carpenters Health & Welfare Fund v. River City Constr. Co.*, 99 F.App'x 612, 615 (6th Cir. 2004), the question was whether an employer had to make contributions for all hours for which it paid its union workers, even if they were not working during some of those hours, not about whether non-union employees performed any covered work.

Here, there has been no finding of fact or stipulation that some covered work was performed by non-Union employees. The requirements of § 1059 are to provide reports for employee participants. Plaintiffs contend Defendant did not keep adequate records but this is a factual dispute. If non-Union employees did not perform covered labor, then § 1059 did not require Defendant to keep records on such employees. Defendant claims none of his non-Union employees performed covered labor. Plaintiffs' claims that Defendant has failed to introduce records presupposes he needed to keep those records, but he did not need to keep such records under § 1059 if non-Union employees were not performing covered labor, and that is a factual matter in dispute.

**D.      Unfair Enrichment of Plaintiffs**

Crawford cites *Agathos v. Starlite Motel*, 977 F.2d 1500, 1507 (3d Cir. 1992), which holds an employee benefit fund cannot recover delinquent contributions if the employees cannot obtain benefits. This would create a windfall for the Funds, Defendant argues.

In *Trustees of the B.A.C. Local 32 Ins. Fund v. Fantin Enters.*, 163 F.3d 965, 970 (6th Cir. 1998), the Sixth Circuit held that when contributions are owed to an employee benefits fund for non-union employees pursuant to a CBA, the contributions are owed even though the employees were

non union members and apparently never received the benefits. The Sixth Circuit has also held double payments by an employer do not relieve an employer of its contractual obligation to make ERISA payments. *Trs. of the B.A.C. Local 32 Ins. Fund v. Ohio Ceiling & Partition Co.*, 48 F.App'x 188, 197 (6th Cir. 2002).

The statute requiring employers to pay delinquent contributions does not make payment contingent on benefits being awarded. *See* 29 U.S.C. § 1145. Although there is no indication non-Union employees received benefits from the Funds, any non-Union employee performing covered work would have been entitled to receive benefits. Therefore, if non-Union employees were performing covered labor, the Funds were at risk of making payments for which it allegedly received no contributions. It is immaterial that the Funds did not apparently have to pay any such benefits. The Funds needed to have money available, regardless of whether that money was used.

## IV. CONCLUSION

For the foregoing reasons, the Court will **GRANT IN PART** Plaintiffs' motion for summary judgment and **DENY** Defendant's motion for summary judgment.

An Order shall enter.

**/s/**_____
**CURTIS L. COLLIER**
**CHIEF UNITED STATES DISTRICT JUDGE**