UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT CHATTANOOGA

THE TRUSTEES OF THE PLUMBERS AND )
STEAMFITTERS LOCAL UNION NO. 43 )
HEALTH AND WELFARE FUND and THE )
TRUSTEES OF THE PLUMBERS AND )
STEAMFITTERS LOCAL UNION NO. 43 )
PENSION FUND, )
                                  )
            *Plaintiffs*,          )
                                  )        No.: 1:06-CV-245
       v.                          )
                                  )        Chief Judge Curtis L. Collier
LARRY CRAWFORD, Individually, and d/b/a )
LARRY CRAWFORD PLUMBING AND )
MECHANICAL CONTRACTORS, LARRY )
CRAWFORD PLUMBING, LARRY )
CRAWFORD PLUMBING COMPANY, and )
CRAWFORD PLUMBING, )
                                  )
            *Defendant*.           )

## MEMORANDUM

In this contentious civil case, Plaintiffs Trustees of the Plumbers and Steamfitters Local

Union No. 43 Health and Welfare Fund, *et al*., allege violations of the Employee Retirement Income

Security Act of 1974, 42 U.S.C. §§ 1001-1456 ("ERISA") by Defendant Larry Crawford,

individually and doing business under various names.  Before the Court is Plaintiffs' motion for

sanctions (Court File No. 161), which alleges Defendant used materially false affidavits to defeat

Plaintiffs' motion for summary judgment and withheld large amounts of discoverable material

during discovery.  Having reviewed the parties' briefs, the applicable law, and the full record, and

having heard oral argument, the Court will **GRANT-IN-PART** Plaintiff's motion for sanctions

(Court File No. 161) and **GRANT** summary judgment to Plaintiffs.

## I.    BACKGROUND

Plaintiffs operate a health and welfare fund ("Fund"), which serves the Plumbers and Steamfitters Local Union No. 43 ("Union"), which represents employees, and the Associated Mechanical Contractors, which represents employers. Defendant is one of those employers, and he contributed to the Fund for himself and his employees for 25 years.

Plaintiffs contend Defendant was required to make contributions to the Fund for non-union employees when they performed work that was covered ("covered work") by the collective bargaining agreement ("CBA") between Plaintiffs and Defendant. They allege Defendant failed to make contributions to the Fund for his non-union employees. Plaintiffs brought this action under ERISA, 29 U.S.C. §§ 1132(a)(3), 1132(g)(2), and 1145, seeking $1.2 million in delinquent contributions, interest, penalties, liquidated damages, and punitive damages, along with costs, expenses, and attorney's fees. Defendant denies being bound by the CBA and denies that any of his non-union employees performed covered work. Defendant contends only union members performed covered work, and Plaintiffs do not allege any deficiency in contributions on behalf of union members.

On September 28, 2007, the parties filed cross motions for summary judgment (Court File Nos. 58 & 60). After the parties had fully briefed the motions, the Court granted-in-part Plaintiffs' motion and denied Defendant's motion (Court File Nos. 85 & 86). The Court held Defendant was bound by the CBA, but declined to fully grant Plaintiffs' summary judgment motion because "There are genuine disputes of material fact as to whether non-Union employees performed covered work." (Court File No. 85, p. 20).

The basis for concluding that there were genuine disputes of material fact were 27 affidavits

submitted by Defendant (Court File No. 60-9), as well as an additional five affidavits from union members swearing they had not observed non-union members performing covered work (Court File No. 60-10) .[1]  Defendant relied on those affidavits to dispute Plaintiffs' summary judgment motion (Court File No. 69, p. 8) and to contend he was entitled to summary judgment (Court File No. 61, p. 15).  Because Defendant's affidavits conflicted with Plaintiffs' evidence, the Court concluded there was a genuine dispute of material fact as to whether any non-union employees perform covered labor (Court File No. 85, pp. 20-21).  Both parties subsequently moved for reconsideration of the Court's summary judgment decision (Court File Nos. 97 & 104), and the Court denied both motions (Court File No. 131).

Some of the affidavits used to defeat summary judgment were obtained as early as January 2007.  In briefing the summary judgment motions, Plaintiffs argued in a footnote that the Court should disregard Defendant's affidavits because Defendant intentionally hid the affidavits from Plaintiffs during discovery (Court File No. 71, p. 7 n.6).  At the time, the Court declined to do so, concluding that the argument in the footnote, without any supporting evidence, was insufficient for the Court to take such a drastic step (Court File No. 85, p. 21 n.5).

Trial was imminent, but was postponed due to family circumstances involving an attorney (Court File No. 114).  With the trial reset for March 31, 2008, Plaintiffs filed a motion elaborating on the earlier footnote (Court File No. 122), and asking for certain witnesses to be excluded or for the Court to reopen discovery.  The Court did both, excluding some witnesses and allowing Plaintiffs to conduct limited discovery (Court File No. 130).  During this period of reopened

---

[1]Defendant also submitted affidavits from non-union members purporting to waive their rights to make claims against the Fund (Court File No. 60-15).

3

discovery, Plaintiffs discovered information and documents which, they contend, "have more completely demonstrated the breadth of [Defendant's] systemic discovery misconduct and the extent to which his misconduct denied [Plaintiffs] access to and timely use of relevant, substantive information." (Court File No. 162, p. 2). As a result, Plaintiffs filed the instant motion for sanctions (Court File No. 161). Defendant denies the allegations. He contends no false information was knowingly submitted and Plaintiffs did not previously request newly-disclosed documents. The Court held a hearing on the motion on June 18, 2008 (Court File No. 171). [2]

## II. FALSE AFFIDAVITS

In defeating Plaintiffs' motion for summary judgment, Defendant relied on affidavits from his employees, which insisted none of them had ever perform covered work. During reopened discovery, some of those witnesses were deposed, wherein they stated they had performed covered work and had seen other non-union employees perform covered work. Plaintiffs argue the affidavits should not have been proffered to the Court because the affidavits were either an intentional attempt to mislead Plaintiffs and the Court or someone knowingly and recklessly failed to investigate the substance of the affidavits. Therefore, Plaintiffs contend sanctions are warranted under Fed. R. Civ. P. 56(g), which prohibits submitting affidavits related to summary judgment in bad faith. Plaintiffs also argue sanctions are warranted under Rule 37 because Plaintiffs would have been able to undermine the false affidavits by deposing the affiants if Defendant had disclosed their names and the affidavits in response to discovery requests.

---

[2]After the hearing, Plaintiffs submitted a motion for sanctions against Defendant's counsel under Fed. R. Civ. P. 11. This Memorandum does not address that motion.

## A. The History of the Affidavits and Discovery in This Case

Pursuant to Fed. R. Civ. P. 26(a)(1) and the Scheduling Order for this case (Court File No. 15), Defendant made his initial disclosures on February 2, 2007, listing people who are likely to have discoverable information. By that time, Defendant had already obtained sworn statements from a number of non-union employees swearing they did not perform covered work, but Defendant did not list any of those employees on his initial disclosures. He obtained additional affidavits in February, April, May, August, and September 2007 (Court File No. 60-9).

In Plaintiffs' discovery requests, they asked Defendant to "Identify any all persons whom you have employed that you claim did not perform any union covered activity at any point during January 1, 1999 to the present." (Court File No. 122-3, p. 6). They also requested all documents "relating to, referring to, or supporting your contention that the employees identified in response to [the previously-mentioned interrogatory] did not perform union covered activity." (Court File No. 122-4, p. 9). On August 30, 2007, the day before the end of discovery, Defendant identified 88 employees who he intended to testify at trial. With such a large list of people and only one day until the end of discovery, there was no opportunity for Plaintiffs to depose the witnesses.

The affidavits were revealed to Plaintiffs for the first time in Defendant's summary judgment motion, which was filed on September 28, 2007, the same day as Plaintiffs' summary judgment motion. Defendant contends he was not required to disclose the affidavits earlier because they were protected from discovery by the work product doctrine. But, as this Court has already noted (Court File No. 130, p. 4 n.2), sworn witness statements and affidavits are evidence; they are a witness's own statement and are not protected by the work product doctrine. *Tuttle v. Tyco Elecs. Installation Servs.*, No. 2:06-cv-581, 2007 WL 4561529, 2007 U.S. Dist. LEXIS 95527, *4 (S.D. Ohio Dec. 21,

2007); *Infosystems Inc., v. Ceridian Corp.*, 197 F.R.D. 303, 304 (E.D. Mich. 2000)).[3]  Defendant

offers no argument that the affidavits contain "mental impressions, conclusions, opinions, or legal

theories of a party's attorney or other representative concerning the litigation."  Fed. R. Civ. P.

26(b)(3)(B).  Rather, the affidavits contain uniform statements that the individual employee did not

perform covered work.  They do not contain attorney notes, thoughts, or legal theories.

The affidavits and sworn statements were evidence that Defendant's non-union employees

did not perform covered work.  Thus, the identities of the employees were clearly responsive to

Plaintiffs' request to Defendant for the identities of "persons whom you have employed that you

claim did not perform any union covered activity."  Likewise, the affidavits were documents

"relating to, referring to, or supporting your contention that the employees . . . did not perform union

covered activity."

Because Defendant did not reveal the witnesses' identities until the end of discovery and did

not reveal the affidavits until they were used in summary judgment, Plaintiffs had no opportunity

to challenge or examine them.  It was only due to unfortunate family circumstances involving one

of Defendant's attorneys that the originally-scheduled trial date was reset, which allowed Plaintiffs

an opportunity to reopen discovery and depose some of the affiants (Court File No. 130).

B.      **Depositions of the Affiants**

In reopening discovery, Plaintiffs deposed some people close to Defendant and seven other

people who were current or former employees of Defendant.  During the depositions, Plaintiffs

---

[3]In contrast, *draft* affidavits are typically covered by the work product doctrine.  *Kyoei Fire & Marine Ins. Co. v. M/V Mar. Antalya*, 248 F.R.D. 126, 155 (S.D.N.Y. 2007) (citing *Ideal Elec. Co. v. Flowserve Corp.*, 230 F.R.D. 603, 608-09 (D. Nev. 2005)).  Notes taken during interviews are also typically covered by the work product doctrine.  *Schipp v. GMC*, 457 F. Supp. 2d 917, 924 (E.D. Ark. 2006).

discovered some of the current or former employees do not stand by the entirety of their affidavits. In the depositions, those employees no longer deny they performed work covered by the contract.[4] Plaintiffs point to the depositions of five non-union employees, Larry Cantrell, Kenneth Snow, Charles Dunnington, Charlie Foster, and Stan Mills, and one union employee, James Swindoll. With the exception of Cantrell, the other five deponents clearly contradict their affidavit testimony.

### 1. Kenneth Snow

Snow signed a statement on January 31, 2007 stating he did not performing covered labor (Court File No. 60-9, p. 26),[5] and then signed a more detailed affidavit on February 19, 2007 (Court File No. 60-9, pp. 24-25).[6]

In his deposition, Snow testified he performed a number of activities which are covered by the collective bargaining agreement. He testified that "we all handle pipe," by which he meant they "[u]nload it off the trucks." (Court File No. 162-6, p. 6). He has also cut pipe before, such as "if the plumbers are in the ditch or something like that, you know, they'd give me – you know, cut that for me." (*Id.*). He described cutting pipe after being asked by other employees (*id.*, pp. 6 & 8).

---

[4]The collective bargaining agreement covers "the installation of all plumbing and/or pipe fitting systems and component parts thereof, including fabrication, assembling, erection, installation, testing, dismantling, repairing, reconditioning, adjusting, altering, servicing and handling, unloading, distributing, tying on and hoisting of all piping materials, by any method, including all hangers and supports of every description and all other work included in the trade jurisdiction of the United Association as defined in the current constitution of the United Association."

[5]The statement reads, in relevant part, "I performed labor / Non-bargaining work" for Crawford Plumbing.

[6]The affidavit reads, in relevant part: "As an employee of Crawford Plumbing, I did not perform in the Local 43 areas any 'bargaining unit work,' which I understand to be the installation of plumbing and/or pipe fitting systems and component parts thereof, including fabrication, assembling, erection, installation, testing, dismantling, repairing, reconditioning, adjusting, altering, servicing and handling, unloading, distributing, tying on and hoisting of all piping materials, by any method, including all hangers and supports of every description."

Snow does not think cutting pipe or carrying a toilet is plumbing, both of which he did as a non-union laborer (*id.*, p. 7). Nor did he think cutting pipe was "altering" it (*id.*, p. 21). Snow never helped plumbers install fixtures but would carry the fixtures to them (*id.*, p. 7). He has carried pipe from trucks, gotten tools for plumbers from trucks (*id.*), and brought materials to work sites to be installed (*id.*, p. 24). Snow also put on hangers for piping materials (*id.*, p. 19). He also did fire caulking and core drilling (*id.*, p. 27). He also carried pipe and laid out pipe by a trench for plumbers to install (*id.*).

During the deposition, Snow was asked to look at the paragraph of his affidavit that lists the covered labor activities he supposedly did not perform. Upon reading it, he said, "I guess I'm not suppose to handle the material. I don't know. To me, handling material is just labor work. . . . I don't really know." (*Id.*, p. 18). When he signed the affidavit, no one explained what the paragraph meant and he did not ask anyone (*id.*). "I guess I thought I was supposed to sign it since I wasn't a union member," he said (*id.*). Snow acknowledged that if covered work is defined to include handling material or unloading material, then he did covered work (*id.*). He made the same acknowledgment for distributing and tying on and hoisting piping materials (*id.*). At the direction of Plaintiffs' counsel, Snow correcting his affidavit by crossing out "handling," "unloading," "altering," and "distributing, tying on and hoisting of all piping materials" (*id.*, pp. 3, 19). He did all those activities prior to signing the affidavit in February 2007 (*id.*, p. 20). The affidavit was inaccurate when he signed it because he had not read it closely (*id.*, p. 21).

Based on Snow's deposition testimony, it is apparent that his affidavit was false and that he did perform covered labor.

## 2. Charles Dunnington

Dunnington signed a statement on January 31, 2007 stating he did not perform bargaining unit work (Court File No. 60-9, p. 34).

In his deposition, Dunnington testified he is a licensed plumber (Court File No. 162-7, p. 3) and did plumbing work for Defendant (*id.*, pp. 4-5, 17). That included putting pipe in ditches and hauling and installing materials (*id.*, pp. 5, 7). Dunnington has sweated copper, installed pipe, and installed fixtures while working for Defendant (*id.*, pp. 12, 13). He also glued PVC pipe together (*id.*, p. 15) and did "trim-out work," "set some fixtures," did "some plastic work," and helped install PVC pipe (*id.*, p. 16).

On Dunnington's affidavit, he waived his rights to recover from the Fund. But he does not recall signing the affidavit, although he states the signature looks like his, and he does not recall ever signing a document in front of Jack Ezell, Defendant's office manager and notary public (*id.*, pp. 21-22, 25). As to his sworn statement that "I performed labor / Non-bargaining work," Dunnington was not sure if he agreed with the statement (*id.*, p. 24). He acknowledged it would be accurate to say he "performed the work of a plumber," but it would not be accurate to say he "only performed labor" (*id.*, p. 25). He acknowledged he does the same type of work as people in the union (*id.*, p. 26) and testified that his superiors knew he performed plumbers' work (although there is no testimony that Defendant himself knew) (*id.*, p. 9, 13).

Based on Dunnington's deposition, it is evident he performed covered labor and his affidavit contained false information.

### 3. Charlie Foster

Foster signed a detailed affidavit on February 2, 2007 listing all bargaining unit work and stating he had not performed any (Court File No. 60-9, pp. 21-22) and a second statement that same

day declaring he always performed "Non-bargaining work" (Court File No. 60-9, p. 23)

In his deposition, Foster testified he applied to be a plumber but worked for Defendant as a laborer, which he defined to include core drilling, insulating, fire caulking, and clean-up (Court File No. 162-8, p. 3). Foster initially stated he never did plumbing, but then acknowledged that he did once. He was asked by a person–whose identity he is not sure of–if he knew how to sweat copper. Foster answered affirmatively and fixed "a couple of leaks" for the person (*id.*, p. 10). He also stated he has caulked the valves on tubs, which alters them (*id.*, pp. 8 & 11).

Based on the deposition testimony, it appears Foster performed some covered labor and his affidavit contained false information.

### 4.    Stan Mills

Stan Mills signed a detailed affidavit on August 15, 2007 listing all bargaining unit work and stating he had not performed any (Court File No. 60-9, pp. 30-31)

Mills testified in his deposition he has helped carry toilets because he considers that part of a helper's or laborer's job (Court File No. 162-10, p. 3). He has also unloaded trucks with pipe and PVC (*id.*). He has also "cut all-thread rods to hang hangers," "cut pipe," unloaded and carried fixtures, and cut PVC (*id.*, pp. 3-4). He agreed the terms "installation," "handling," "unloading," "distributing," and "dismantling" should be removed from his affidavit for it to be accurate (*id.*, pp. 16-17).

Therefore, it is evident from Mills's deposition that he performed covered labor and his affidavit included false information.

### 5.    Larry Cantrell

Cantrell signed an affidavit on February 19, 2007, which stated he did not perform any

bargaining unit work (Court File No. 60-9, pp. 19-20).

During his deposition, Cantrell testified he has been a plumber for 30 years, but his work for Defendant has been "[m]ostly running jobs," essentially acting as a foreman by "[m]aking sure the work gets done" (Court File No. 162-5, pp. 3-4). His work for Defendant involved "keeping material on the job, ordering material, keeping up with time, making sure it is done right, installed right" (*id.*, p. 4). The work involved monitoring other employees, not picking up tools (*id.*). Another employee testified that Cantrell mainly watched other people do things (Court File No. 162-7, p. 6). There is nothing in Cantrell's deposition testimony that clearly shows he performed covered labor or contradicts his affidavit.

### 6.     James "Ike" Swindoll

Swindoll is a union member (Court File No. 162-9, p. 3). He signed an affidavit stating he has "not observed non-union members performing bargaining unit work" (Court File No. 60-10, pp. 5-6).[7]

At his deposition, Swindoll testified he saw non-union workers dig ditches and help unload materials from trucks (*id.*, p. 4). He acknowledged Defendant's non-union plumbers did work under the contract definition of plumbing, including unloading and distributing (*id.*, p. 8). But he described those activities as laborers' work, and said they only did "[a] very few" of the things in the description (*id.*). He said the laborers do help unload trucks, including helping carry toilets and pipe (*id.*, p. 9). Swindoll's testimony also establishes that non-union workers performed covered

---

[7]Several of the non-union witnesses testified in their depositions they saw non-union employees performing covered labor. This testimony also shows that non-union employees performed covered labor. However, unlike the affidavits signed by union members like Swindoll, testimony that non-union employees saw other non-union employees performing covered labor does not contradict the affidavits.

labor, and it contradicts his affidavit.

### C. Responsibility for the Affidavits

At the hearing on the motion for sanctions, neither party called witnesses or put on evidence. Both parties presented arguments to the Court and responded to questions from the Court. Defendant confirmed that Jack Ezell, a notary public and office manager for Defendant, obtained the signatures on the affidavits submitted to the Court (Transcript, "Tr.," Court File No. 175, pp. 7-8). Defendant stated Ezell had a "general understanding" of what employees were hired to do, "not what they actually did." (Tr. 8). The Court noted, based upon Ezell's position, that he is an agent of Defendant who based on his job would have some idea of what type of work employees are performing (Tr. 12). The Court stated: "As the office manager, I think he would know that people are paid different amounts based upon their qualifications, their experience, and other things." (Tr. 12). Counsel for Defendant confirmed, "He would know that." (Tr. 12). Defendant argued that Ezell was instructed to present affidavits to employees but not to discuss the affidavits (Tr. 13). This method was intended to avoid coercing the employees (Tr. 11).

Following the hearing, Defendant submitted a brief, presenting previous deposition testimony by Ezell in support of Defendant's contention that Ezell was not knowledgeable about what work employees performed (Court File No. 173). Ezell began working at Defendant's plumbing company in November 2003 (Court File No. 173-2, "Ezell dep.," p. 8), midway through the time frame covered by this lawsuit. His responsibilities for the company were "Payroll, answering the phones, picking up mail, and going to the bank." He also matched invoices with delivery tickets for payment and was responsible for filing, as well as making contributions to the funds (Ezell dep., pp. 9, 226-28). Ezell testified he is not a plumber and has no plumbing experience

(Ezell dep., p. 34). He has no personal observations of whether particular employees do plumbing (Ezell dep., p. 41). He does not know what work is covered by the CBA (Ezell dep. pp. 233-34). Defendant expressed regret Ezell was not at the hearing to testify. He argues Ezell's deposition testimony makes clear Ezell did not know what work employees performed or that the affidavits were false.

In response to Defendant's brief, Plaintiffs submitted a brief arguing Ezell's job duties should have alerted him to the falsity of the affidavits and Defendant is responsible for submitting the affidavits to the Court regardless of Ezell's culpability (Court File No. 174). Plaintiffs argue that Defendant, as the person who submitted the affidavits to the Court, is responsible for their content. Furthermore, Plaintiff's argue, Ezell typed letters on behalf of Defendant and wrote injury reports and separation notices which showed what types of work employees performed.

## III.    DOCUMENTS NOT ORIGINALLY RELEASED DURING DISCOVERY

The second basis for Plaintiffs' motion for sanctions is Defendant's alleged failure to disclose discoverable material. The Court will discuss the newly-disclosed documents to the extent they indicate non-union employees performed covered labor.

Early in this case, Plaintiffs filed a motion to compel discovery, which contended Defendant had not been fully responsive to Plaintiffs' discovery requests (Court File Nos. 16 & 21). As a result of that motion, United States Magistrate Judge Susan K. Lee ordered Defendant to certify he has "conducted a diligent and good faith search for documents responsive to Plaintiffs' discovery requests and produced all responsive documents no later than Friday, April 13, 2007." (Court File No. 24, pp. 1-2). On that day, Defendant made his certification (Court File No. 122-5).

Subsequently, Plaintiffs noted that some statements in Defendant's briefs suggested he had not fully complied with his discovery obligations (Court File No. 123-2, pp. 23-24). Among Plaintiffs' requests in that motion was that Defendant file an affidavit with the Court certifying his compliance with specific discovery obligations (*id.*, p. 28). The Court declined to impose such a requirement, instead assuming Defendant was fully complying (Court File No. 130, p. 5). "Defendant also states he has produced all requested documents, has certified as such, and he notes Plaintiffs have no evidence he is hiding documents," the Court noted (*id.*). "Although some of Defendant's statements are worrisome . . . he has also indicated that he has fully complied with the discovery requests, and the Court will not assume otherwise." (*Id.*).

Although the Court did not require Defendant to submit a second certification, it did allow Plaintiff to reopen discovery based on questions about what documents Defendant has. As a result, on March 10, 2008, Defendant produced about 2,600 pages of discoverable documents not previously produced (Court File No. 162, p. 23). On March 14, 2008, Plaintiffs discovered about ten containers of documents relating to Defendant's plumbing business at the office of Defendant's accountant. Plaintiffs assert these documents should have been turned over earlier in discovery. Defendant contends the documents were not responsive to Plaintiffs' discovery requests, with the exception of a few documents that were accidentally not disclosed.

Of particular importance here are two letters indicating that non-union employees performed covered work. Plaintiffs rely on a letter written by Defendant which mentions that a foreman was given a memo about shower heads (Court File No. 162-9). The letter, dated October 12, 2006, states, "Yesterday, October 11th at 3:30 p.m., we had our last section of rough in plumbing inspected . . . At the present, we are raising tub valves . . . . We will be finishing our tub valves by the 13th and

be ready for sheetrock by the 16th of October." Time sheets for October 12 and 13, 2006 show there were eight employees working on the project in question, none of whom was a member of the union. Thus, Plaintiffs argue the letter is proof non-union workers performed covered labor.

Plaintiffs also cite another letter by Defendant, which shows two employees who worked overtime at a project on a certain date were performing covered labor (Court File No. 167-12). Time records show two employees who worked overtime on that date at that project (Court File No. 167-13). One employee was a union member and one employee was not a union member, thus showing that a non-union member performed covered labor.


IV.     RECONSIDERING SUMMARY JUDGMENT

At the hearing, the Court indicated it was considering looking anew at Plaintiffs' original summary judgment motion in light of the new evidence. "District courts have authority both under common law and [Fed. R. Civ. P.] 54(b) to reconsider interlocutory orders and to reopen any part of a case before entry of final judgment." *Rodriguez v. Tenn. Laborers Health & Welfare Fund*, 89 F. App'x 949, 959 (6th Cir. 2004). One of the traditional justifications for reconsidering an interlocutory order is the availability of new evidence. *Id.* In this case, there is new evidence in the form of the deposition testimony and newly-released letters discussed earlier. This evidence warrants the Court reconsidering summary judgment, which should be granted "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c).

## V.    DISCUSSION

Under ERISA:

> Every employer who is obligated to make contributions to a multiemployer plan under the terms of the plan or under the terms of a collectively bargained agreement shall, to the extent not inconsistent with law, make such contributions in accordance with the terms and conditions of such plan or such agreement.

29 U.S.C. § 1145.  That section may be enforced by the trustees of a plan in federal court.  *Laborers Health & Welfare Trust Fund v. Advanced Lightweight Concrete Co.*, 484 U.S. 539, 547 (1988).

Plaintiffs brought suit under 29 U.S.C. § 1132(a)(3) & (g)(2).  Section 1132(a)(3) allows plan fiduciaries to obtain equitable relief.  If Plaintiffs are entitled to judgment, the Court is required to award Plaintiffs

> (A) the unpaid contributions,
> (B) interest on the unpaid contributions,
> (C) an amount equal to the greater of—
>> (i) interest on the unpaid contributions, or
>> (ii) liquidated damages provided for under the plan in an amount not in excess of 20 percent (or such higher percentage as may be permitted under Federal or State law) of the amount determined by the court under subparagraph (A),
>
> (D) reasonable attorney's fees and costs of the action, to be paid by the defendant, and
> (E) such other legal or equitable relief as the court deems appropriate.

§ 1132(g)(2).

### A.    Non-Union Employees Performed Covered Work

Plaintiffs were denied summary judgment based on the existence of genuine issues of material fact as to whether non-union employees performed covered labor.  It is now evident from the affidavits and the newly-disclosed letters that non-union employees did perform covered labor.

Plaintiffs contend the affidavits should be disregarded as false, while Defendant contends the factual discrepancies create a factual question to be decided by a jury.

Plaintiffs rely on cases prohibiting parties from submitting affidavits that contradict earlier deposition testimony. It is accepted that "a party cannot create a genuine issue of fact sufficient to survive summary judgment simply by contradicting his or her own previous sworn statement (by, say, filing a later affidavit that flatly contradicts that party's earlier sworn deposition) without explaining the contradiction or attempting to resolve the disparity." *Cleveland v. Policy Mgmt. Sys. Corp.*, 526 U.S. 795, 806 (1999); *accord Aerel, S.R.L. v. PCC Airfoils, L.L.C.*, 448 F.3d 899, 906 (6th Cir. 2006); *Reid v. Sears, Roebuck & Co.*, 790 F.2d 453, 460 (6th Cir. 1986). "[T]he utility of summary judgment as a procedure for screening out sham fact issues would be greatly undermined if a party could create an issue of fact merely by submitting an affidavit contradicting his own prior testimony." *Aerel*, 448 F.3d at 908 (quoting *Franks v. Nimmo*, 796 F.2d 1230, 1237 (10th Cir. 1986)).

To determine if an affidavit should be inadmissible in such circumstances, a district court "must first determine whether the affidavit directly contradicts the nonmoving party's prior sworn testimony." *Id.* "A directly contradictory affidavit should be stricken unless the party opposing summary judgment provides a persuasive justification for the contradiction." *Id.* Here, some of the affidavits do directly contradict the deposition testimony and Defendant has offered no explanation, but rather disclaims any responsibility for third party witnesses changing their testimony.

The Sixth Circuit had discussed factors for determining whether a party has attempted to create a sham issue of genuine material fact. The existence of a sham fact issue turns on "whether the affiant was cross-examined during his earlier testimony, whether the affiant had access to the pertinent evidence at the time of his earlier testimony or whether the affidavit was based on newly discovered evidence, and whether the earlier testimony reflects confusion [that] the affidavit

attempts to explain." *Id.* (quoting *Franks*, 796 F.2d at 1237).

Here, the Court concludes no reasonable jury could credit the testimony in the affidavits in light of the subsequent deposition testimony, along with the letters indicating non-union employees performed covered work. Thus, the employees falsely swore in their affidavits that they did not perform covered work, when in fact they did. Unlike in the above cited cases, the affidavits in this case were made before the depositions, not after. But one of the factors citing approvingly by the Sixth Circuit in *Aerel* is whether the deponent was cross-examined. Plaintiffs emphasize that the deposition testimony took place under cross-examination and is therefore more credible, regardless of its chronological occurrence relative to the affidavits. Defendant has proffered no reason it should matter that the affidavits were signed before the depositions. Defendant contends that the contradictory statements are merely impeachment evidence for trial. *See* Fed. R. Evid. 613. The existence of contradictory testimony would still create a factual question for the jury, Defendant argues, thus precluding summary judgment. However, the deposition testimony shows that the affidavits were false and some of the employees did not even understand the affidavits they were signing.

Because of the deposition testimony and the letters, it has now been "demonstrated that some covered work was performed." *Michigan Laborers' Health Care Fund v. Grimaldi Concrete*, 30 F.3d 692, 697 (6th Cir. 1994). Thus, the Court's reason for denying Plaintiffs' motion for summary judgment no longer exists.

### B. There Are No Adequate Time Records

The conclusion that some covered work was performed is of the utmost importance. An employer who contributes to multi-employer benefit funds is required to "maintain records with

respect to each of his employees sufficient to determine the benefits due or which may become due to such employees." 29 U.S.C. § 1059. Section 1059 uses "mandatory language" and imposes a "clear duty" on employers to "maintain adequate records." *Grimaldi*, 30 F.3d at 695 & 696.

In *Grimaldi*, the employer could not produce records for over 80 percent of the work its employees performed and its remaining records were incomplete. *Id.* at 696. Therefore, the Sixth Circuit concluded the employer failed to maintain adequate records. *Id.* This failure shifted the burden to the employer "to prove what work was covered and what was not covered." *Id.* In *Grimaldi*, it was clear that some covered work was performed but there was no way to determine the precise amount because of the inadequate records. The Sixth Circuit concluded that under such circumstances, "an employer is liable for contributions on all hours worked during a period in which it has been demonstrated that some covered work was performed." *Id.* at 697.

Here, there are no adequate records as to the amount of covered labor performed by non-union workers. In his exhibit list for trial, Defendant listed summary exhibits regarding hours employees worked (Court File No. 83, pp. 3-4 (numbers 28-39)). In support of an earlier motion challenging the summary exhibits (Court File No. 123), Plaintiffs submitted one of Defendant's summary exhibits, number 39, to the Court (Court File No. 122-9). The exhibit shows an employee performed 865 hours of non-covered work and 0 hours of covered work. Plaintiffs submitted other defense summary exhibits, which also showed that the employees in question performed certain numbers of hours of non-covered work and 0 hours of covered work (Court File No. 122-10, 122-11). In response, Defendant contended the summaries are based on documents in Defendant's possession and testimony Defendant will introduce at trial (Court File No. 125, p. 7). In an earlier brief, Defendant had disputed whether Plaintiffs could prove Defendant failed to maintain adequate

records (Court File No. 69, p. 29). Defendant asserted he did keep records which show what his employees were doing and at what times and places (*id.*, p. 32). But Defendant's position and testimony has always been that non-union employees did not perform any covered work. Thus, any records in support of that position would falsely state non-union employees performed no covered labor.

In any event, no records have been produced for the Court. In support of Defendant's original motion for summary judgment, he argued he has paid all amounts due to Plaintiffs (Court File No. 61, pp. 10-20). Although he argued various reasons no contributions are due, he did not present any evidence of his record-keeping as to what employees performed covered labor and which did not. In response to Plaintiff's motion for summary judgment, Defendant contended he has met his duty to maintain records (Court File No. 69, p. 29). He argued he had the right to present evidence rebutting Plaintiffs' evidence (Court File No. 69, pp. 29-35), but did not produce any records establishing what work was covered and which work was not performed.

At the hearing, the Court stated it was examining how it would have ruled on summary judgment if it was aware of the evidence now available (Tr. 15). Twice more, the Court specifically suggested it may revisit the summary judgment decision (Tr. 23, 28). After the hearing, each party submitted a brief, along with evidence in the form of deposition testimony. Yet even in this last opportunity to show adequate records, Defendant has not produced any records showing how many hours non-union employees worked in covered labor. Based on the entire history of this case, the only conclusion the Court can reach is that there are no such records.

### C. Summary Judgment for Plaintiffs is Appropriate

"[A]n employer's failure to maintain adequate records shifts the burden to the employer to

prove that the work performed was covered or not covered." *Grimaldi*, 30 F.3d at 696. *Grimaldi* also establishes that the burden of proof in such a situation is not easily overcome. In *Grimaldi*, the employer produced invoices for about 20% of its work and the owner gave uncontradicted testimony that covered work took about the same amount of time as non-covered work to complete. *Id.* at 696. However, the Court interpreted the collective bargaining agreement to require a "precise number of hours worked." The Court held the employer's information was insufficient because it "does not set forth the hours worked on covered projects, nor does it specify which laborers were working on those projects." *Id.* Furthermore, "it would be an exercise in pure speculation to attempt to ascertain from this information, and the limited inferences that can be drawn from it, the portion of the remaining 80% of work for which no records at all are available that constituted covered work." *Id.* Therefore, the employer's information was insufficient to meet its burden of proof on the amount of covered work, and the Sixth Circuit affirmed the district court's grant of summary judgment to the plaintiff funds for "contributions on all hours worked during a period in which it has been demonstrated that some covered work was performed." *Id.* at 696-97.

The precision required in *Grimaldi* was based on the collective bargaining agreement's specification that contributions be made "per hour paid each employee doing the work covered by this Agreement." *Id.* at 696 & n.1. In this case the collective bargaining agreement contains a similar provision requiring contributions "for each hour worked by each employee whose work is covered by this Agreement." (Court File No. 58-3, p. 15). Therefore, the Court concludes Plaintiffs are entitled to "contributions on all hours worked during a period in which it has been demonstrated that some covered work was performed."

### D.     Damages Calculation

The Court must now determine the appropriate amount of damages. In *Grimaldi*, the parties stipulated the correct amount. 30 F.3d at 697. In this case, the amount is disputed.

Defendant argued in support of his original summary judgment motion that Plaintiff's damages claims were flawed, in that they include contributions already made to Plaintiffs, contributions made to other union funds, and employees not covered by the 2004 CBA. Plaintiff's expert testified he looked at employees earning $11 or more per hour (Fitch dep., Court File No. 61-7, p. 40).

Because of Defendant's inadequate records, he has the burden of showing the damage calculation is inaccurate. *Grimaldi*, 30 F.3d at 696; *see also id.* at 697 (An "employer cannot be heard to complain that the damages lack the precision of measurement that would be possible had he kept records in accordance" with § 1059.). The Sixth Circuit has affirmed awards of delinquent contributions based on auditors' reports where employers failed to offer sufficient evidence in rebuttal. *Trs. of the Painters Union Deposit Fund v. Ybarra Constr. Co.*, 113 F. App'x 664, 669 (6th Cir. 2004) (rejecting the use of an unsworn statement and deposition testimony to challenge an auditor's calculation of damages); *Trs. of Detroit Carpenters Health & Welfare Fund v. River City Constr. Co.*, 99 F. App'x 612, 615 (6th Cir. 2004) (auditor's report was sufficient proof of contributions owed where the defendant employer did not maintain records as required by § 1059).[8]

In this case, Defendant challenges the accuracy of the calculations by pointing to the inclusion of Ezell and four backhoe operators.

---

[8]In that case, the court noted that the collective bargaining agreement also shifts the burden of proof to the employer by providing that the auditor may estimate the amount of contributions due and the burden to prove otherwise falls to the employer. *Id.* Such a provision does not appear to exist in the CBA governing this case.

As noted earlier, Ezell was an office manager and knows nothing about plumbing. The closest thing he did to manual labor was filing. Although the Court is not aware of any records as to Ezell's work, it is undisputed that he did not go to work sites or do anything resembling labor or plumbing work. Although Sixth Circuit caselaw requires employers to present sufficient evidence to contradict an audit, Ezell's deposition testimony suffices under these particular circumstances. An employer's liability for all hours worked results from the imprecision due to the employer's failure to maintain records about the amount of covered labor. *See Grimaldi*, 30 F.3d at 697. In *Grimaldi*, all the employees for whom contributions were sought were laborers. 30 F.2d at 694. It is not logical to include hours worked by someone who could not have performed covered labor. *See Michigan Laborers' Health Care Fund v. Taddie Constr., Inc.*, 119 F. Supp. 2d 698, 704 ( E.D. Mich. 2000) (requiring employer contributions "on all hours worked by *laborers*") (emphasis added).[9] There is no reason to suggest or indicate Ezell did any covered labor, and there is uncontradicted evidence he performed no covered labor. In light of Sixth Circuit precedent, deposition testimony about work hours is insufficient to meet an employer's burden of proof, but under the particular circumstances, the testimony is sufficient to show Ezell did no work that could possibly be covered, and therefore no contributions are owed on his behalf.

As to the backhoe operators, however, they were performing manual labor and for them to be excluded from the damage calculation, Defendant would be obligated to provide records showing they performed no covered labor. Instead, the only evidence submitted is Defendant's affidavit

---

[9]This part of *Taddie Construction* was discussed approvingly by the Sixth Circuit in *Ybarra Construction*, 113 F. App'x at 669 ("Because the defendants in *Taddie Construction* did not disprove the plaintiffs' calculations, they owed contributions on all hours worked by *laborers*, whether covered by the agreement or not." (emphasis added)).

testifying he employed the four employees "at various times to do backhoe work." He also testified, "None of these people have ever done any plumbing work for me." Without documentary evidence to support these assertions, Defendant has not produced sufficient evidence that the backhoe operators performed no covered labor. *Cf. Laborers' Pension Fund v. RES Envtl. Servs.*, 377 F.3d 735, 739 (7th Cir. 2004) ("There is no specific information supporting these generalized and conclusory allegations. Indeed, the affidavit fails to introduce any factual assertion to dispute the audit's findings."). The lack of specificity and documentation hamper Defendant's challenge to the audit. He argues the auditor's determination that certain employees were performing covered labor is false and unsubstantiated, but other than the previously mentioned people, Defendant points to no specific errors and offers no documentary evidence to rebut the auditor's determinations (*e.g.*, Court File No. 72, pp. 15-17). Because there are no adequate records, Defendant bears the burden of proof to challenge the audit, a burden he has not satisfied. *See Bds. of Trs. of the Ohio Laborers' Fringe Benefit Programs v. Jenkins*, 2008 WL 2404820, 2008 U.S. App. LEXIS 12626 (6th Cir. June 11, 2008) (affirming grant of summary judgment to fund where employer did not identify any records showing summary judgment was improper, and holding "conclusory affidavits" that contributions were not due for certain work did not generate questions of material fact).

To determine the exact amount of contributions owed in light of the Court's determination that no contributions are owed on behalf of Ezell, the Court will **REFER** the question of damages to the magistrate judge.

### E.    Plaintiffs Are Entitled to Attorney's Fees

Because Plaintiffs are entitled to judgment, they are also entitled to attorney's fees. 29 U.S.C. § 1132(g)(2) ("In any action under this title by a fiduciary for or on behalf of a plan to

enforce section 515 [29 U.S.C. § 1145] in which a judgment in favor of the plan is awarded, the court shall award the plan . . . reasonable attorney's fees and costs of the action.").  The mandatory language of § 1132(g)(2) ("shall award") is in clear contrast to the permissive language of § 1132(g)(1) ("the court in its discretion may allow a reasonable attorney's fee" in any action under ERISA other than those described in § 1132(g)(2)).

As previously mentioned, under 29 U.S.C. § 1145, employers are "obligated to make contributions to a multiemployer plan under the terms of the plan or under the terms of a collectively bargained agreement shall, to the extent not inconsistent with law, make such contributions in accordance with the terms and conditions of such plan or such agreement."  Defendant has been found liable for failing to make contributions required under § 1145, and therefore the Court is required to impose attorney's fees under the mandatory language of § 1132(g)(2).

The Court will **REFER** the calculation of attorney's fees to the magistrate judge.[10]

### F.      Sanctions for Affidavits

In addition, some attorney's fees and expenses are warranted because Defendant violated Fed. R. Civ. P. 56(g) by submitting affidavits in bad faith.  Fed. R. Civ. P. 56(g) states: "If satisfied that an affidavit under this rule is submitted in bad faith or solely for delay, the court must order the submitting party to pay the other party the reasonable expenses, including attorney's fees, it incurred as a result. An offending party or attorney may also be held in contempt."

Under Rule 56(g), if a court finds that a party submitted an affidavit in bad faith, it is "*obligated* to impose sanctions."  *Scott v. Metro. Health Corp.*, 234 F. App'x 341, 368 (6th Cir.

---

[10]As noted earlier, Plaintiffs recently filed a motion for Rule 11 sanctions against counsel for Defendant.  Because that matter will be addressed at a later time, this award of attorney's fees does not entitle Plaintiffs to attorney's fees or costs related to the preparation of the Rule 11 motion.

2007) (emphasis in the original) (affirming sanctions where party submitted affidavits she knew were not truthful). Based on the evidence in this case and the hearing on the motion for sanctions, the Court concludes Defendant submitted the affidavits in bad faith. It is now clear the affidavits were false. Some of the workers who signed the affidavits later gave testimony contradicting the affidavits and explaining they did not understand the affidavits. Defendant, as the person submitting the affidavits, was responsible for not submitting affidavits he knew to be false. Yet the deposition testimony establishes that non-union workers regularly performed covered labor, and letters written by Defendant show he knew non-union employees performed covered labor.

For sanctions to be appropriate, the affidavits must have prejudiced the opposing party. *Sutton v. United States SBA*, 92 F. App'x 112, 117 (6th Cir. 2003) (affirming denial of sanctions where the district court did not rely on the affidavit in granting summary judgment). Although summary judgment is not a guaranteed right, Plaintiffs have suffered prejudice. Since the Court would have granted Plaintiffs' summary judgment motion but for the false affidavits, Plaintiffs were prejudiced by the false affidavits.

In *Rogers v. AC Humko Corp.*, 56 F. Supp. 2d 972, 979-81 (W.D. Tenn. 1999), the district court concluded an agent of the defendant made a false statement in an affidavit submitted for summary judgment. Subsequent events led the court to conclude the statement was not a simple mistake. In language apt to the instant case, the court noted:

> At best, the affidavit contained a highly reckless representation of an important fact by Defendant's agent which representation Defendant never sought to expunge from the record despite subsequent notice as to its falsity. At worst, it was a deliberate and calculated misrepresentation abetted by counsel and designed to thwart justice and prevent a fair resolution of this case. Wherever the truth lies between these two extremes, the Court is satisfied that [the agent's] affidavit, submitted in support of Defendant's first motion for summary judgment, was presented in bad faith.

*Id.* at 981. Therefore, the court applied Rule 56(g) to award reasonable expenses resulting from the affidavit, including attorney's fees. *Id.*

Based on Rule 56(g), Plaintiffs are entitled to expenses resulting from this litigation after the Court's summary judgment decision on December 18, 2007. To the extent these expenses overlap with the attorney's fees to which Plaintiffs are entitled, Plaintiffs can only recover once. To determine the appropriate amount of expenses owed, the Court will **REFER** this question to the magistrate judge.

As to the allegations regarding whether Defendant failed to properly respond to Plaintiffs' original discovery requests, the Court declines to rule on whether a discovery violation occurred. Because Plaintiffs are being made whole as a result of this summary judgment decision, they will not be made any more complete if the Court were to determine sanctions are warranted for the discovery violations alleged.

## VI.     CONCLUSION

For the foregoing reasons, the Court determines summary judgment should be **GRANTED** in favor of Plaintiffs and the motion for sanctions should be **GRANTED IN PART** (Court File No. 161). The Court will **REFER** to the magistrate judge for determination the (1) correct amount of damages, pursuant to 29 U.S.C. § 1132(g)(2)(A)-(C), (2) reasonable attorney's fees and costs, pursuant to 29 U.S.C. § 1132(g)(2)(D), and (3) expenses after December 18, 2008, pursuant to Fed. R. Civ. P. 56(g).

An Order shall enter.

**/s/**_____
**CURTIS L. COLLIER**
**CHIEF UNITED STATES DISTRICT JUDGE**